UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA GODFREY,<br><br>        Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>        Defendant. | Case No.  1:21-cv-00992-JLT-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. 17)<br><br>FOURTEEN-DAY DEADLINE |

**<u>Findings and Recommendations</u>**

**<u>INTRODUCTION</u>**

Plaintiff Lisa Godfrey ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income benefits under Title XVI of the Social Security Act.  The matter is currently before the Court on Plaintiff's motion for summary judgment.  (Doc. 17.)  The parties' briefing on the motion was

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

1

submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for findings and recommendations.  (Doc. 17, 20, 22.)

Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record and is based upon proper legal standards.  Accordingly, this Court will recommend affirming the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed an application for supplemental security income benefits on October 16, 2018. AR 154-63.[2]  Plaintiff alleged that she became disabled on September 12, 2014, due to major depressive disorder, general anxiety, and autism spectrum disorder. AR 173.  Plaintiff's application was denied initially and on reconsideration.  AR 84-88, 92-96.  Subsequently, Plaintiff requested a hearing before an ALJ.  ALJ John J. Flanagan held a hearing on August 21, 2020.  AR 36-63.  ALJ Flanagan issued an order denying benefits on September 1, 2020.  AR 19-31.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  AR 1-5.  This appeal followed.

### Hearing Testimony

The ALJ held a telephonic hearing on August 21, 2020.  AR 36-63.  Plaintiff appeared with her attorney, Amanda Foss.  *Id.*  Sugi Komarov, an impartial vocational expert, also appeared and testified.  AR 57-61.

In response to questions from the ALJ, Plaintiff testified that she completed high school and also attended community college for a couple of months.  AR 41.  Plaintiff noted that she attended regular high school classes rather than special education classes.  *Id.*  Plaintiff confirmed that she had no past work activity.  AR 42.  However, she volunteered at an animal shelter from April 2019 to March 2020.  *Id.* She stopped volunteering because of the COVID-19 outbreak.  AR 41-42.  Plaintiff attended the animal shelter four days a week for two hours each day.  AR 42. She was taking care of

---

[2]     References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

the cats, cleaning their litter boxes. *Id.*  Plaintiff also testified that she has a horse.  AR 43.  At least for a period of time, she was going to the stables daily to clean her horse's pen, take her out and feed her. *Id.*  She rarely rides the horse.  *Id.*

In response to questions from her attorney, Plaintiff testified that she moved back home after starting college because she was very depressed.  AR 44-45.  A counselor helped her make the decision to withdraw after a very serious depression and suicide attempt in early March.  AR 45.

When working at the animal shelter, Plaintiff was primarily by herself.  She has a hard time interacting with the public and requested a shift that avoided people.  *Id.*  On average, she worked two hours a day, but they were very understanding if she needed to leave early or was not able to work.  *Id.*

Plaintiff testified that she has panic attacks almost weekly, maybe bi-weekly.  AR 45-46.  Her entire diaphragm contracts, she has trouble breathing, she sweats really hard, she sometimes vomits, and she has to get out of the room.  AR 46.  It takes Plaintiff an hour to fully recover from a panic attack.  *Id.*  The attacks are from sensory issues, sometimes brought on by noises that bother her.  She sees her counselor about once a month and is working on coping techniques.  AR 46-47.  She takes medication to help with the attacks, which include antidepressants and Xanax to help her sleep.  AR 45-47.  She does not take the Xanax daily.  AR 51.  On a typical night, it usually takes her quite a few hours to fall asleep.  She also wakes up in the middle of the night.  AR 52.

When asked about her daily activities, Plaintiff testified that she does not need help with activities like taking a shower or brushing her teeth, but she has to be reminded a lot by her mother. AR 47.  Her mother also takes her to appointments because Plaintiff does not drive.  *Id*.  She would not be able to pay her own bills if she lived alone.  *Id*.  She goes to the grocery store with her mother, but her mother does the shopping.  AR 48.  She sometimes needs to leave the grocery store because of anxiety, approximately every four or five visits.  *Id*.  With her depression, there are days that she does not want to get out of bed, but she needs to take care of her horse and her mother encourages her to continue her daily activities. *Id.* She has nightmares every couple of weeks. AR 48-49.  She normally takes naps during the day for about an hour or two because she gets fatigued and very tired.  AR 49.  She interacts with friends weekly over Zoom because of the pandemic.  *Id.*  She would see her friends frequently before the pandemic, but she also frequently skipped because she would be drained and not

really want to see them.  *Id.*  They would usually meet at a restaurant or the movies.  *Id.*  She had difficulty going to restaurants because the silverware causes panic attacks.  AR 49-50.  She has to choose restaurants that do not have metal silverware.  *Id.*

When working at the animal shelter, Plaintiff has issues taking direction from her supervisors.  AR 50.  They will need to repeat directions once or twice.  *Id.*  She will sometimes get it done the first day, but forget the next day and will have to have it repeated again.  *Id.*  She has always needed to be reminded about things daily.  *Id.*  She forgets and needs things repeated to her.  *Id.*

When asked by the ALJ if she could do a regular job caring for animals, Plaintiff testified that she did not think that she could because she cannot deal with people.  AR 52-53.  At her volunteering position, she found it difficult to remember which litter boxes to clean and which cats need food.  AR 52.  She cannot really connect to people socially, make eye contact with them or connect emotionally.  AR 52-53.  She also testified that she has never tried to get a driver's license as she gets scared thinking about driving.  AR 53.

Plaintiff also testified that she has a computer and a smartphone.  *Id.*  She uses them to connect with her friends online or to talk with her family.  AR 54.  She has about 100 friends on Facebook, but mainly just keeps in touch with her family.  *Id.*  When asked about exercise, Plaintiff testified that she does not exercise other than visits to her horse, walking around and riding when she can.  *Id.*  She has had the horse for five years.  *Id.*

When asked about a typical day, Plaintiff testified that she wakes up at 7:00, leaves the house around 10:00 and goes to the horse barn until about 12:00.  AR  55. She will go home and take a nap until about 2:00.  *Id.*  She will hang around the house until dinnertime, unless she needs to help her mom with something or help with the cats.  *Id.*  Her ability to assist depends on her energy level.  *Id.*  She then tries to go to bed around 10:00.  *Id.*  She lives in a house with her mom and dad.  *Id.*  Her mom usually does the household chores during the day.  *Id.*  When asked about hobbies, Plaintiff testified that she likes to draw.  AR 55-56.  She has sketch pads and pens and likes to draw animals.  AR 56.  She took art classes in high school, but just draws for herself.  *Id.*  Since October of 2018, she has taken one trip with her parents to the coast for a wedding.  *Id.* She also went on a five-day trip to Disneyland with her parents in October 2017. AR 57.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE.  AR 57-61.  The ALJ asked the VE hypothetical questions.  *Id.*  For the first hypothetical, the ALJ asked the VE to consider a younger individual, 25 years of age, with a regular high school education, and no past relevant work.  AR 57-58.  The individual had no exertional limitations, but in terms of mental functioning, the individual was restricted to simple, repetitive tasks consistent with a specific vocation preparation of 1 or 2, work done by rote, the same function over and over again and there would be few changes, if any.  AR 58.  In this hypothetical, there would be occasional contact with others and the individual would be working with objects instead of people.  *Id.*  The work would not be done rapidly, such as in response to a machine like a conveyor belt or assembly line, and would not have high production quotas, such as piece work.  *Id.*  The ALJ indicated that these limitations were designed to make the job as simple and stress-free as possible.  *Id.*  The VE testified that there would be jobs that exist in the national economy that this individual could perform.  *Id.*  At the light level, these jobs would include marker, mail clerk, and photocopying machine operator.  AR 58-59.

For the second hypothetical, the ALJ asked the VE to consider the restrictions in the first hypothetical and add that the individual would need additional supervision to stay on task and complete tasks for up to two-hour increments.  AR 59-60.  The ALJ explained that in a two-hour period, the individual would get off task and would need additional supervision to get back on task and to complete the work.  This would be a continuing factor of the claimant's work activity.  *Id.* The VE testified that beyond the initial probationary/training period, managers and supervisors expect employees to perform without really much supervision or re-guidance. AR 60. The VE confirmed that the individual may be able to obtain work but could not sustain or keep work.  *Id.*

The VE also opined that an employer would generally tolerate absenteeism up to one day per month.  AR 60-61.  Beyond that, a person would have difficulty maintaining employment.  *Id.*  Also, if there was a pattern of absenteeism, arriving work too late or leaving too early, then an individual would have difficulty maintaining employment.  AR 61.  The VE further opined that an individual could be off task and still maintain competitive, unskilled work a maximum of 10% per day.  *Id.*

///

///

5

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 19-31.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 3, 2018, the application date.  AR 24.  The ALJ identified the following severe impairments:  major depressive disorder/dysthymic disorder and anxiety/panic disorder.  *Id.*  The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.  AR 24-26.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations:  capable of simple repetitive tasks consistent with SVP 1 and SVP 2, done by rote with few changes; limited contact with others defined as occasional interaction with co-workers, the public and supervisors; and limited to working with objects and not people, should perform work that is not fast paced such as working in response to a machine like a conveyer belt or assembly line, and that does not have high production quotas like piece work.  AR 26-29.  With this RFC, the ALJ found that Plaintiff could perform work in the national economy, such as marker, mail clerk, and photocopy machine operator.  AR 29-30.  The ALJ therefore concluded that Plaintiff had not been under a disability since October 3, 2018, the date her application was filed.  AR 30-31.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as

6

1    adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be

2    considered, weighing both the evidence that supports and the evidence that detracts from the

3    Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

4    evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.,*

5    *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

6    determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

7    and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

8    *Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

9                                             **REVIEW**

10             In order to qualify for benefits, a claimant must establish that he or she is unable to engage in

11   substantial gainful activity due to a medically determinable physical or mental impairment which has

12   lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §

13   1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such

14   severity that he or she is not only unable to do his or her previous work, but cannot, considering his or

15   her age, education, and work experience, engage in any other kind of substantial gainful work which

16   exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The

17   burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

18   1990).

19                                          **DISCUSSION**[3]

20             Plaintiff contends that the ALJ erred by rejecting the opinions of the consultative psychiatric

21   examiner, Dr. Ekram Michiel, and Plaintiff's treating therapist, Diane Ashmore, LMFT.  (Doc. 17 at

22   9-16.)  Plaintiff also contends that the ALJ erred by failing to include work-related limitations

23   consistent with Plaintiff's limitations and by failing to offer clear and convincing reasons for rejecting

24   Plaintiff's subjective complaints.  (Doc. 17 at 14-16.)

25             ///

26

27   _____

     [3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including

28   arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific
     argument or brief is not to be construed that the Court did not consider the argument or brief.

                                                        7

**A.  Medical Opinion Evidence**

Plaintiff first contends that the ALJ erred by rejecting the opinion evidence from Dr. Michiel and Ms. Ashmore without setting forth specific, legitimate reasons for doing so.  (Doc. 17 at 12.)

Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions.  20 C.F.R. § 404.1520c; 20 C.F.R. § 416.920c.   Under the new regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a).

The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c)(1)-(5).  Supportability and consistency are the most important factors.  20 C.F.R. § 416.920c(b)(2).

Ninth Circuit case law preceding the new regulations afforded deference to the medical opinions of treating and examining physicians.  Indeed, prior to the current regulations, the Ninth Circuit required ALJs to provide clear and convincing or specific and legitimate reasons for rejecting the medical opinions of treating or examining physicians.  Contrary to Plaintiff's suggestion, these standards of articulation no longer apply in light of the new regulations, and the ALJ was not required to provide "specific and legitimate reasons" to discount the medical opinions.  *See Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (finding revised social security regulations "clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant").  However, the Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."  *Id.*  "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other

source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings."  *Id.*  (internal citations omitted); *see* 20 C.F.R. § 416.920c(c).  In this context,

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence. Id. § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim. Id. § 404.1520c(c)(2).

*Id.* at 791-92.

### 1.  Opinion of Dr. Michiel

On May 30, 2020, Dr. Ekram Michiel, M.D., completed a psychiatric evaluation report.  AR 347-351.  Dr. Michiel found that Plaintiff could take care of her personal hygiene and is able to do household chores when she has the energy.  AR 349.  Dr. Michiel also observed that Plaintiff was crying nonstop during the interview and her speech was interrupted by open crying.  *Id*.  Dr. Michiel noted that the Plaintiff's mood was "depressed," her affect was "intense, tearful," her thought process was goal-directed, her thought content was not delusional, and that Plaintiff denied suicidal or homicidal ideation.  *Id*.  Dr. Michiel listed normal findings in the Cognitive Skills tests administered, including for Orientation, Attention/Concentration, Immediate Recall, Calculations, Fund of Knowledge, Judgment/Insight, Abstract Thinking, and Memory.  AR 349-350.  Dr. Michiel's diagnoses included panic disorder and dysthymic disorder.  AR 350.  In discussing Plaintiff's adaption to work-like situations, Dr. Michiel opined that Plaintiff "is able to maintain attention and concentration to carry out simple job instructions.  However, it is very difficult for the claimant to relate to coworkers, supervisors, and the general public."  AR 350.  Dr. Michiel also opined that Plaintiff "is unable to maintain attention and concentration to carry out an extensive variety of technical and/or complex instructions," but "there are no restrictions on activities of daily living."  AR 350.  In the Medical Statement of Ability to Do Work-Related Activities (Mental) form that Dr. Michiel filled out, Dr. Michiel checked the "None" box for Plaintiff's limitations to "Understand and remember simple instructions" and "Carry out simple instructions.  AR 352.  Dr. Michiel checked "Moderate" for Plaintiff's difficulty to "make judgments on simple work-related decisions" and checked that Plaintiff had a "Marked" inability to "Understand and remember complex instructions."  *Id*.  Dr. Michiel also noted that Plaintiff had an "Extreme" inability to "Carry out complex

instructions" and to "make judgments on complex work-related decisions." *Id*. In support of this assessment, Dr. Michiel wrote "panic disorder" and "dysthymic disorder." *Id*. Dr. Michiel further checked the "Marked" inability boxes for Plaintiff's inability to interact appropriately with the public, with supervisors, and with coworkers. AR 353. Dr. Michiel also noted that Plaintiff had a "Marked" inability in responding appropriately with usual work activities. *Id*. In support of these assessments, Dr. Michiel noted the panic and dysthymic disorder diagnoses and his review of the record and evaluation of Plaintiff. *Id*.

In evaluating Dr. Michiel's opinion, the ALJ summarized Dr. Michiel's findings and reasoned as follows:

> In addition to the progress notes, the record also contained a March 30, 2020 consultative report from Ekram Michiel, M.D. The mental status examination was normal; however, based on the claimant's subjective reports and the records made available to Dr. Michiel, he diagnosed the claimant with panic disorder and dysthymic disorder and assigned her a global functioning score of 50 (Exhibit 6F)… As for medical opinions and prior administrative medical findings, the opinion of Dr. Michiel is the most consistent with the overall medical evidence of record. Specifically it supports a finding of severe mental disorder related to depression and anxiety with at least moderate limitations. However, the overall medical evidence of record, including the claimant's own reported activity, does not support the opinion that the claimant would have marked limitation in social interaction. The undersigned finds Dr. Michiel opinion persuasive in that it supports the finding that the claimant retains the mental residual functional capacity to perform work activity in a simple and stress free environment.

AR 28, 347-351.

The Court finds that the ALJ properly evaluated Dr. Michiel's opinion under the new regulations. First, the ALJ found that Dr. Michiel's opinion was inconsistent with the overall medical record. AR 28. The ALJ's reasoning invokes the consistency factor, which means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920c(c)(2). In examining Dr. Michiel's opinion, the ALJ notes that "the treatment records demonstrate that her symptoms are largely stable and controlled by her current medical regimen (Exhibits 2F at 4, 14; 8F at 98, 107, 160)." AR 28; 277, 287, 459, 468, 521. This is supported by Dr. Kevin Marmolejo's treatment notes, which mostly include assessments that

Plaintiff's condition is stable or improving and normal findings as to Plaintiff's Thought Processes, Thought Content, Orientation, Attention, Concentration, Memory, and Fund of Knowledge. AR 277, 287, 363-367, 371-374, 377-379, 380-383, 386-391, 412-415, 416-420, 423-426, 429-433, 434-438, 440, 448, 454, 466, 475, 487, 499-500, 522-523, 531, 544, 559-560, 568-569, 579, 583-586.  It is also supported by Ms. Ashmore's treatment record, which demonstrates Plaintiff's ability to interact with others and engage in certain tasks.  AR 592 (Plaintiff began volunteering at an animal shelter, was trained by another volunteer, and discussed social and health concerns with her mother), 594 (stressors included activities of volunteering at the animal shelter and caregiving for her father), 595 (Plaintiff was continuing to volunteer at the animal shelter), 598 (Plaintiff took care of her mother post-skin surgery, had seen her horse, and was preparing for dog training),  600 ("Good stress: she is enjoying her time a few hours a week at the pet adoption agency"), 608 ("Level of functioning 1. Volunteers 2 hours at Miss Winkles [animal shelter] 2. Friends went to Fuever for dinner"), 610 ("Socially: Client said she had to talk to a volunteer on the phone a few times from the pet adoption agency which was a big step for her," "She takes her dog Sonja for a walk," "She and her parents had to get all of their animals out safely in cart in the front yard" after a nearby fire), 613 (noting that Plaintiff walked her dog, "continues to calm her anxiety and hyperarousal by caring for her Animals: Kitties, dog, and horse," saw her horse and there were "Some lessons going on," and made red bean buns), 616-617 (Plaintiff "has been trying some recipes at home. She likes her sweet bean bun recipe and her potsticker recipe," "has been talking to her friends," "is continuing with her same interests and routines: caring for her dog and horse, keeping her room clean"), 620 (noting in Treatment Summary that Plaintiff "was able to venture out and try some of her new social skills by being a volunteer and getting to know new people. She can only tolerate a couple of hours and the routine must be regimented and predictable.").  The ALJ's examination of the medical record thus supported his discounting Dr. Michiel's opinion.

Second, the ALJ noted that Dr. Michiel's opinion was also inconsistent with "the claimant's own reported activity."  AR 28.  An ALJ may discount a physician's opinion when it is inconsistent with the claimant's reported activities.  *Morgan v. Comm'r*, 169 F.3d 595, 600-02 (9th Cir. 1999) (finding that the inconsistency between medical opinion and reported daily activities was a specific

and legitimate reason for the ALJ to reject a treating physician's opinion).  In discussing Plaintiff's

activities, the ALJ noted that:

> the claimant's daily activities do indicate the ability to function in a
> sustained manner independently. For example, providing daily care for an
> adult horse and volunteering at the local animal shelter. As for her social
> abilities, although they are not extensive, prior to the pandemic, she was
> able to meet regularly with a group of friends in a restaurant setting.
> Finally, she reported in a progress note that she was able to go on a 5-day
> Disneyland trip. While she mentioned she had panic attacks in the hotel,
> there was no mention of a panic/anxiety attack while she was inside the
> Disneyland Park where there are large crowds and a lot of noise (Exhibit
> 2F at 14).

AR 27, 42 (Plaintiff worked at an animal shelter from April 2019 through March 2020), 49 (Plaintiff

would "usually meet at a restaurant or the movies" when she saw friends), 57 (Plaintiff took a five-day

trip to Disneyland in October 2017 with her parents), 278 ("She has been busy helping her father who

has severe medical problems"), 287 ("Reports her mood has been stable, and she enjoyed a 5 day trip

to Disneyland a few weeks ago. She reports she felt anxious by noise in her hotel and took Xanax

0.25mg to help decrease anxiety so she could sleep."), 594 ("Caretaking her dad since his foot

surgery-will take up to 6 weeks"), 598 ("Her mom had her skin forehead surgery. Client has been her

nurse.").  Plaintiff reported engaging in social activity, continued to volunteer at an animal shelter, and

took care of her own pets.  AR 592, 595, 598, 600, 608, 610, 613, 616-617, 620.  Plaintiff also testified

that when she was going to the horse stables daily, she would feed her horse and would clean her

horse's pen depending on her energy level and the weather and feed the horse.  AR 43.  Plaintiff

further testified that she would help her mom with household chores if needed, depending on her

energy.  AR 55.  The Court therefore finds the ALJ appropriately discounted Dr. Michel's opinion

given Plaintiff's relatively intact daily activities.

Plaintiff argues that the ALJ erred in only discussing the inconsistencies between Dr. Michiel's

opinion and the overall record rather than discussing the consistency between Dr. Michiel's opinion

and his own findings and explanations.  (Doc. 17 at 14.)  However, the Ninth Circuit has noted that

"Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from

other medical sources and nonmedical sources in the claim.'"  *Woods*, 32 F.4th at 792.  As discussed

above, the ALJ explained the inconsistencies between Dr. Michiel's opinion and the medical and nonmedical sources.  AR 28.  Additionally, the ALJ appears to have analyzed Dr. Michiel's findings, discussing Dr. Michiel's mental status examination and diagnoses before noting that it "supports a finding of severe mental disorder related to depression and anxiety with at least moderate limitations" but "does not support the opinion that the claimant would have marked limitation in social interaction."  AR 28.  Plaintiff's argument is therefore unavailing.

Plaintiff further argues that the ALJ did not discuss any activities that contradict Dr. Michiel's opinion and mischaracterizes Plaintiff's activities.  (Doc. 17 at 14-15.)  As discussed above, the ALJ noted that Plaintiff engaged in daily activities that indicated an ability to function in a sustained manner independently.  AR 27, 42, 49, 57, 278, 287, 594, 598.  As part of this argument, Plaintiff contends that there is no evidence in the record "that Plaintiff regularly attended dinners with friends in restaurant setting throughout the relevant period."  (Doc. 17 at 15.)  However, Plaintiff testified that during the pandemic she and her friends "try for every Sunday, but sometimes… we skip" interacting via Zoom.  AR 49.  Plaintiff also testified that prior to the pandemic, she would see her friends approximately that frequently at a restaurant or at the movies, though she would "frequently…skip[] because I would just be drained and not really want to see them."  *Id.*  Despite Plaintiff's testimony that she would frequently skip, her testimony indicates that she was seeing her friends regularly prior to the pandemic.  In arguing that the ALJ mischaracterized the record, Plaintiff also contends that Plaintiff's "trip to Disneyland occurred a year prior to the relevant period for adjudication, and involved significant anxiety which Plaintiff reported was not relieved by Xanax."  While the cited report shows that Plaintiff reported that "she felt anxious by noise in her hotel and took Xanax 0.25mg to help decrease anxiety so she could sleep," the same report indicated that Plaintiff "reports her mood has been stable, and she enjoyed a 5 day trip to Disneyland a few weeks ago."  AR 287.  Additionally, Plaintiff testified that her five-day trip to Disneyland with her parents occurred in October 2017, post-dating her application.  AR 57.  Plaintiff's argument that the ALJ mischaracterized the record in discounting Dr. Michiel's opinion thus fails.

Plaintiff also argues that the ALJ erred in sufficiently articulating the reasoning for discounting Dr. Michiel's opinion and instead offered only conclusory assertions.  (Doc. 22 at 1-3); *Woods*, 32

1    F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's

2    opinion as unsupported or inconsistent without providing an explanation supported by substantial

3    evidence. The agency must 'articulate ... how persuasive' it finds "all of the medical opinions" from

4    each doctor or other source, 20 C.F.R. § 416.920c(b), and 'explain how [it] considered the

5    supportability and consistency factors' in reaching these findings").  "An ALJ can satisfy the

6    'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and

7    conflicting clinical evidence, stating his interpretation thereof, and making findings.'"  *Garrison*, 759

8    F.3d at 1012.  As discussed above, the ALJ sufficiently articulated the reasoning by summarizing the

9    relevant record and testimony, then pointing to inconsistencies between Dr. Michiel's opinion and the

10   record as well as inconsistencies between Dr. Michiel's opinion and Plaintiff's reported activities.  AR

11   28.  Because the ALJ thoroughly articulated both how persuasive he found Dr. Michiel's opinion and

12   his reasoning, Plaintiff's arguments that the ALJ's analysis was conclusory are unavailing.

13           Accordingly, the Court finds that the ALJ sufficiently articulated his reasons supported by

14   substantial evidence in discounting Dr. Michiel's opinion.

15           2.   Opinion of Ms. Ashmore

16           On December 15, 2018, Diane Ashmore, LMFT, completed a Short-Form Evaluation for

17   Mental Disorders.  AR 301-304.  In the form, Ms. Ashmore marked that Plaintiff's interview behavior

18   was "guarded," and commented: "Deficits in verbal and non-verbal communication and social

19   interaction. Significantly restricted patterns of behavior, interests, and daily activities."  AR 301.  Ms.

20   Ashmore marked that Plaintiff's memory was "Normal" but commented that Plaintiff's memory was

21   "Normal when not stressed. When she shuts down she has difficulty with her recall."  *Id.*  Ms.

22   Ashmore marked that Plaintiff's intelligence was "above average" to "average" and commented:

23   "Normal intelligence and language, but with autistic type traits. Trouble with social skills, sensory

24   input, making transitions, and must hold to a rigid routine to function."  *Id.*  For mood and affect, Ms.

25   Ashmore marked that Plaintiff was "anxious," "depressed," and "fearful," and commented that

26   "Client's Mental Condition impacts her ability to understand, remember and apply pertinent

27   information on a daily basis. It also impacts her social interactions and her ability to focus, persist, and

28   continue at a regular pace. She does not adapt well or manage her life well on her own and requires

14

dependence on her parents currently." AR 302.  Ms. Ashmore listed that Plaintiff had no issues with

hallucinations, delusions, or illusions and had "Goal directed" thought processes, but had "obsessions"

and commented: "Obsession – rigid routines in order to function. Makes sure doors and windows are

shut." *Id.*  In evaluating Plaintiff's progress, Ms. Ashmore commented: "Progress has been minimal

regarding her ADL's. Growth has been evident in client developing trust in therapeutic relationship,

area of self-awareness, some increased communication with parents. Prognosis – poor self efficacy

skills and… Disorders impair functioning." AR 303.  For the medical source statement section of the

form, Ms. Ashmore marked "Poor," meaning "the evidence supports the conclusion that the individual

cannot usefully perform or sustain the activity" for Plaintiff's ability to:

> Understand, remember, and carry out complex instructions, Understand,
> remember, and carry out simple instructions, Maintain concentration,
> attention and persistence, Perform activities within a schedule and
> maintain regular attendance, Complete a normal workday and workweek
> without interruptions from psychologically based symptoms, Interact
> appropriately with the public, Interact appropriately with supervisors,
> Interact appropriately with co-workers, [and] Respond appropriately to
> changes in a work setting.

*Id.*

On July 13, 2020, Ms. Ashmore also completed a Mental Medical Source Statement.  AR 355-

359.  In this form, Ms. Ashmore checked the box for "Category IV," signifying "Precludes

performance for 15% or more of an 8-hour work day" for all of Plaintiff's ability areas listed on the

form, including "Mental Abilities Understanding and Memory," "Mental Abilities Sustained

Concentration and Memory," "Social Interaction," and Adaptation.  AR 355-357.  Ms. Ashmore also

marked that Plaintiff's impairment lasted or can be expected to last at least 12 months and that the

earliest date that the limitations would apply was "approximately" January 19, 2019.  AR 357, 359.  In

support of these evaluations, Ms. Ashmore wrote:

> While the client may have the capability of understanding and
> remembering Instructions, the difficulty occurs when she is stressed and
> overwhelmed. It is during the moments of stress when she can experience
> memory and mental decline, as well as total mental shut down… The
> client suffers from clinical anxiety and depression. She does not perform
> well under pressure or stress and can easily become emotionally
> dysregulated. The client has hypersensitivity and gets overwhelmed by
> sensory overload. She has the inability to tolerate persistent sensory

disturbance, such as loudness sensitivity and sound tolerance. She requires a low arousal sensory environment with none to few distractions in order to manage anxiety and increase concentration. When dysregulated, she can go from hyperarousal (anxious, fearful) to hypoarousal (depressed and shut down)… The client exhibits social communicative difficulties by engaging in only stereotyped and repetitive behavior. She has difficulty making minimal eye contact during an interaction which appears to be distracting and creates sensory overload. It is hard for her to attend to auditory messages if stressed or agitated. She struggles with knowing strategies to initiate, terminate, or facilitate a conversation. She lacks a repertoire of skills and has difficulty selecting/applying appropriate social communication strategies in every day situations and engaging in social Interactions… The client has a low adaptation level. She has restricted interests, desires sameness, and engages in repetitive routine activities. She is resistive in varying degrees to changes in routine or environment. Unpredictability promotes anxiety and severe stress. She prefers experiences or events which are interpreted in black-and-white or very concrete terms. The client does not drive and has not utilized or mastered the public transportation system. She receives the support and advocacy from her parents whom she lives with currently.

AR 355-357.

In evaluating Ms. Ashmore's opinion, the ALJ first compared her findings to Dr. Marmolejo's findings:

Since the claimant's protective file date, the record indicates that the claimant continued to receive treatment from her longtime treating psychiatrist, Kevin Marmolejo, M.D. along with a therapist, Diane Ashmore, LMFT. While progress notes from both providers indicates abnormal findings, the level of severity are inconsistent with each other Dr. Marmolejo consistently noted that the claimant exhibited anxious mood and affect and was occasionally tearful. However, he also noted improvement, stability, or that the claimant's symptoms are well-controlled (Exhibits 8F at 17-140, 169, 170, 182-185, 197, 200, 209, 220). In contrast, Ms. Ashmore noted in a December 2018 progress note that the claimant had severe to extreme symptoms with findings of verbal and nonverbal communication deficits and impaired concentration (Exhibits 4F at 6, 7) but subsequent notes indicated relatively normal findings except for evidence of anxious and depressed mood (Exhibits 7F; 9F at 2, 6)

AR 28, 302-303, 355-361, 378-501, 530, 531, 543-546, 558, 561, 570, 581, 588, 592.  The ALJ then reasoned as follows:

The opinions of therapist, Diane Ashmore (Exhibits 4F; 6F) that consistently rate the claimant's symptoms and limitations as poor, to the extent that she would not be able to function are not persuasive. These

opinions are not from "an acceptable medical source" and are not supported by the underlying treatment records (Exhibit 9F). Among other things, these records show that in addition to her horse and volunteering at the animal shelter, she also has a dog, Sonja, and kittens, which she cares for as pets. She was able to deal with stressful activities without decompensating, i.e., having to help care for her father who had foot surgery and getting all of her animals safely out of the house when the house behind hers caught fire. In fact, Ms. Ashmore's treatment records are more consistent with the Kaiser records that the claimant is stable on her medication rather than "Poor", i.e., "...the individual cannot usefully perform or sustain the activity" in all areas of functioning. An individual with the degree of restriction indicated by Ms. Ashmore would most likely have to be institutionalized rather than living in society, as is the claimant.

AR 29, 587-629.

The Court finds that the ALJ properly evaluated Ms. Ashmore's opinion under the new regulations. First, the ALJ noted that the opinions are not supported by Ms. Ashmore's underlying treatment records. An ALJ may discount opinions that are internally inconsistent. *Houghton v. Comm'r*, 493 F. App'x 843, 845 (9th Cir. 2012) (finding that the ALJ had a legitimate basis to discount physicians' internally inconsistent opinions in favor of other opinions "better supported by the evidence and more consistent with the record as a whole."). Here, the ALJ points to the inconsistency between Ms. Ashmore's "Poor" and "Category IV" opinions and Plaintiff's abilities to interact with others and deal with stressful activities. AR 592 (Plaintiff began volunteering at an animal shelter, was trained by another volunteer, and discussed social and health concerns with her mother), 594 (stressors included activities of volunteering at the animal shelter and caregiving for her father), 595 (Plaintiff was continuing to volunteer at the animal shelter), 598 (Plaintiff had been taking care off her mother post-skin surgery, had seen her horse, and was preparing for dog training), 600 ("Good stress: she is enjoying her time a few hours a week at the pet adoption agency"), 608 ("Level of functioning 1. Volunteers 2 hours at Miss Winkles [animal shelter] 2. Friends went to Fuever for dinner"), 610 ("Socially: Client said she had to talk to a volunteer on the phone a few times from the pet adoption agency which was a big step for her," "She takes her dog Sonja for a walk," "She and her parents had to get all of their animals out safely in cart in the front yard" after a nearby fire), 613 (noting that Plaintiff walked her dog, "continues to calm her anxiety and hyperarousal by caring for her Animals: Kitties, dog, and horse," saw her horse and there were "Some lessons going on," made

red bean buns), 616-617 (Plaintiff "has been trying some recipes at home. She likes her sweet bean bun recipe and her potsticker recipe," "has been talking to her friends," "is continuing with her same interests and routines: caring for her dog and horse, keeping her room clean"), 620 (noting in Treatment Summary that Plaintiff "was able to venture out and try some of her new social skills by being a volunteer and getting to know new people. She can only tolerate a couple of hours and the routine must be regimented and predictable.").  Given the inconsistencies between Plaintiff's demonstrated abilities in Ms. Ashmore's treatment notes and Ms. Ashmore's opinion regarding Plaintiff's abilities, the ALJ permissibly discounted Ms. Ashmore's opinion.

Second, the ALJ noted that the treatment records "are more consistent with the Kaiser records that the claimant is stable on her medications rather than 'Poor,'" suggesting that Ms. Ashmore's opinion was inconsistent with the broader medical record.  AR 29.  The ALJ's reasoning invokes the consistency factor, which means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim."  20 C.F.R. § 416.920c(c)(2).  While the ALJ notes that Ms. Ashmore's December 15, 2018 opinion describes "severe to extreme symptoms with findings of verbal and nonverbal communication deficits and impaired concentration," he notes that Ms. Ashmore's "subsequent notes indicated relatively normal findings except for evidence of anxious and depressed mood."  AR 29, 592, 594, 595, 598, 600, 608, 610, 613, 616-617, 620.  This largely aligns with Dr. Marmolejo's treatment notes, which address Plaintiff's anxious mood and include assessments that Plaintiff's condition is stable or improving along with normal findings as to Plaintiff's Thought Processes, Thought Content, Orientation, Attention, Concentration, Memory, and Fund of Knowledge.  *See* AR 277, 287, 363-367, 371-374, 377-379, 380-383, 386-391, 412-415, 416-420, 423-426, 429-433, 434-438, 440, 448, 454, 466, 475, 487, 499-500, 522-523, 531, 544, 559-560, 568-569, 579, 583-586.  The ALJ's examination of the overall medical record thus supported his discounting Ms. Ashmore's opinion.

Third, although the ALJ evaluated Ms. Ashmore's opinions on the merits, the ALJ also found that Ms. Ashmore's opinions were not "from an 'acceptable medical source.'"  AR 29. Claims filed on or after March 27, 2017 are subject to § 416.920c's revised rules which do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."  § 20 C.F.R. §

416.920c(a). The Ninth Circuit has "affirmed under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006); s*ee also Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (holding that the "harmless error analysis applies ... to assess the impact of the ALJ's failure to even mention [a treating physician] or [his] notes, let alone its failure to give specific and legitimate reasons that are supported by substantial evidence for rejecting a treating source's medical opinion"); *Hernandez v. Berryhill*, 707 F. App'x 456, 458 (9th Cir. 2017) (holding that the ALJ committed harmless error in misidentifying physician's notes); *Roy v. Colvin*, 656 F. App'x 816, 818–19 (9th Cir. 2016) (holding the ALJ committed harmless error where she did not consider a reviewing physician's opinion because she believed the physician was "referring to 'another individual of the same name.'"). Here, any error by the ALJ is harmless because the ALJ evaluated Ms. Ashmore's opinion as to the relevant supportability and consistency factors.

Plaintiff argues that the ALJ mischaracterized Ms. Ashmore's opinion, overrepresenting the degree of limitation she found and improperly comparing Plaintiff's demonstrated abilities to the work-related tasks Ms. Ashmore opined about.  (Doc. 17 at 15-16.)  In the July 13, 2020 Mental Medical Source Statement, Ms. Ashmore noted that Plaintiff's abilities in Mental Abilities Understanding and Memory," "Mental Abilities Sustained Concentration and Memory," "Social Interaction," and "Adaptation" "precludes performance for 15% or more of an 8-hour work day."  AR 355-357.  However, in Ms. Ashmore's Treatment Summary from July 28, 2020, she notes that Plaintiff "was able to venture out and try some of her new social skills by being a volunteer and getting to know new people. She can only tolerate a couple of hours and the routine must be regimented and predictable."  AR 620.  Additionally, in Ms. Ashmore's Clinical SOAP Note from September 26, 2019, Ms. Ashmore comments, "Good stress: she is enjoying her time a few hours a week at the pet adoption agency."  AR 600.  Ms. Ashmore's treatments notes and the record reveals the Plaintiff was able to achieve limited work-like tasks despite stress, including interacting with others, volunteering, caregiving for parents, and taking care of animals. AR 43, 55, 592, 594, 595, 598, 600, 608, 610, 613, 616-617, 620.  Plaintiff's argument that the ALJ mischaracterized over overrepresented Ms. Ashmore's opinion is thus unavailing.

1    Accordingly, the Court finds that the ALJ sufficiently articulated his reasons supported by

2    substantial evidence in discounting Ms. Ashmore's opinions.

3    **B.  Plaintiff's Subjective Complaints**

4    Plaintiff next contends that the ALJ committed harmful error by failing to provide clear and

5    convincing reasons for rejecting Plaintiff's testimony as inconsistent with the evidence.  (Doc. 17 at

6    17.)  In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-

7    step analysis.  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r*, 359 F.3d

8    1190, 1196 (9th Cir. 2004).  First, the claimant must produce objective medical evidence of her

9    impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.

10   *Garrison*, 759 F.3d at 1014.  If the claimant satisfies the first step and there is no evidence of

11   malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only

12   by offering specific, clear and convincing reasons for doing so.  *Id.* at 1015.

13   Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be

14   expected to cause the alleged symptoms.  AR 27.  However, the ALJ discounted Plaintiff's statements

15   concerning the intensity, persistence, and limiting effects of those symptoms, noting that the

16   statements were not consistent with medical evidence and other evidence in the record.  *Id.*  The ALJ

17   was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's

18   subjective complaints.

19   First, the ALJ found that Plaintiff's subjective symptoms were inconsistent with treatment

20   notes.  *Id.*  Although lack of supporting medical evidence cannot form the sole basis for discounting

21   testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.

22   2005).  With respect to Plaintiff's depressive and anxiety symptoms, the ALJ found that Plaintiff's

23   treating psychiatrist, Dr. Marmolejo, "consistently noted that the claimant was either improving or

24   stable with treatment.  (Exhibit 8F at 185, 200, 209, 220, 225)."  AR 27, 546, 561, 570, 581, 586.

25   While some of Dr. Marmolejo's visit evaluations show Plaintiff's condition worsening, most of his

26   visit evaluations include assessments that Plaintiff's condition is stable or improving.  *See* AR 377-379

27   ("Pt. has been less anxious and less depressed. She has been attending school regularly again."); 416-

28   420 ("Pt. Has improved since decreasing life stress. She agreed to continue medication."); 426 ("Pt.

Has been stable with treatment. She has residual anxiety but did not want to start Buspar or other anxiolytics. She agreed to continue medication."); 432 ("Pt. Has been stable with treatment. She agreed to continue medication."); 437 ("Pt. Has been stable with treatment. She agreed to continue medication."); 450 ("Pt's depressive symptoms have been stable. She continues to have distressing anxiety, and agreed to continue medications."); 456 ("Pt's depressive symptoms have been stable. She continues to have distressing anxiety, and agreed to continue medications. Increased dose of prn Xanax which she rarely takes."); AR 462 ("Pt's depressive symptoms have been stable. She continues to have distressing anxiety, and agreed to continue medications."); AR 468 ("Pt's depressive symptoms have been stable. She continues to have distressing anxiety, and agreed to continue medications."); AR 475 ("Pt's depressive symptoms have been stable. She continues to have distressing anxiety, and agreed to continue medications."); AR 489 ("Pt's depressive symptoms have been stable. She continues to have distressing anxiety, and agreed to continue medications."); AR 521-524 ("Pt. Has improved with treatment, and her illness anxiety has not been impairing. She agreed to continue medications."); AR 533 ("Pt. Has improved with treatment, and her illness anxiety has not been impairing. She agreed to continue medications."); AR 558-561 ("Pt. Has improved and her anxiety is fairly well controlled. She agreed to continue her current medications."); AR 567-571 ("Pt. Has improved and her anxiety is fairly well controlled. She agreed to continue her current medications."); AR 578-581 ("Pt. Has improved and her anxiety is fairly well controlled. She agreed to continue her current medications."); AR 583-586 ("Pt. Is stable with treatment. She has residual anxiety. She agreed to continue her current medications.").  Furthermore, in the "Mental Status Evaluation" portion of Dr. Marmolejo's treatment records, although Plaintiff's affect and mood is typically listed as "anxious," other findings such as concentration, attention, and behavior are usually normal.  AR 363-367, 371-374, 377-379, 380-383, 386-391, 412-415, 416-420, 423-426, 429-433, 434-438, 440, 448, 454, 466, 475, 487, 499-500, 522-523, 531, 544, 559-560, 568-569, 579, 584. Additionally, in the most recent evaluations from Dr. Marmolejo in the record – those from December 6, 2019, March 6, 2020, and June 11, 2020 – Plaintiff's mood is listed as "okay."  AR 568, 579, 584. Accordingly, the ALJ properly considered medical evidence as one factor in discounting Plaintiff's testimony.

Second, the ALJ found that Plaintiff's subjective symptoms and difficulties were inconsistent with her relatively intact daily activities.  AR 27-28.  An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged.  *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"), *superseded by regulation on other grounds*.  Even where a plaintiff's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.  *Id.* at 1113.  Here, the ALJ noted that Plaintiff's "activities of caring for her horse, volunteering at an animal shelter, and meeting her friends on Sundays at a restaurant are inconsistent with the claimant's allegations that her conditions prevent her from doing anything and that she is unable to be around other people" and that "claimant's daily activities do indicate the ability to function in a sustained manner independently."  AR 27, 42 (Plaintiff worked at an animal shelter from April 2019 through March 2020), 49 (Plaintiff would "usually meet at a restaurant or the movies" when she saw friends), 57 (Plaintiff took a five-day trip to Disneyland with her parents), 278 ("She has been busy helping her father who has severe medical problems"), 287 ("Reports her mood has been stable, and she enjoyed a 5 day trip to Disneyland a few weeks ago. She reports she felt anxious by noise in her hotel and took Xanax 0.25mg to help decrease anxiety so she could sleep."), 594 ("Caretaking her dad since his foot surgery-will take up to 6 weeks"), 598 ("Her mom had her skin forehead surgery. Client has been her nurse.").  In addition, other treatment notes show Plaintiff interacting with others, volunteering, caregiving for parents, and taking care of animals.  AR 592, 595, 600, 608, 610, 613, 616-617, 620.  Plaintiff also testified that when she was going to the horse stables daily, she would feed her horse and would clean her horse's pen depending on her energy level and the weather and feed the horse.  AR 43.  Plaintiff further testified that she would help her mom with household chores if needed, depending on her energy.  AR 55.  The Court therefore finds the ALJ appropriately discounted Plaintiff's subjective complaints given Plaintiff's demonstrated daily activities.

Third, the ALJ properly considered that the "record indicates that the claimant has a history of depression and anxiety that was treated with Wellbutrin and Xanax with her symptoms ranging

between mild to moderate in nature (Exhibits 1F at 2; 8F at 2, 3, 5, 74, 76, 114, 116)."  AR 27, 248 ("Mild to moderate symptoms or some difficulty in functioning"), 363 (Diagnosis of "Major Depressive Disorder, Recurrent Episode, Moderate"), 364 (noting previous prescription of Wellbutrin), 366 (increasing prescription dose of Wellbutrin and beginning Xanax prescription), 435 (noting current prescription of Wellbutrin and Xanax and that "patient describes his/her symptoms of depression as been stable"), 437 (noting current prescription of Wellbutrin and Xanax and that "Pt. Has been stable with treatment. She agreed to continue medication."), 475, 477 (noting current prescription of Wellbutrin, Xanax, and Inderal and that "Pt's depressive symptoms have been stable. She continues to have distressing anxiety, and agreed to continue medications.").  "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."  *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983)).  The ALJ found that, though Plaintiff experiences mood swings and intermittent panic attacks, the "treatment records demonstrate that her symptoms are largely stable and controlled by her current medical regimen."  AR 27-28; 277, 287, 377-379, 416-420, 426, 432, 437, 450, 456, 459, 462, 468, 475, 489, 521-524, 533, 546, 558-561, 567-571, 578-581, 583-586.  This aligns with the majority of Dr. Marmolejo's visit evaluations including assessments that Plaintiff was either stable or improving.  *Id.*  Given that the ALJ appropriately assessed the record to determine whether Plaintiff's impairment could be effectively controlled, the ALJ properly used Plaintiff's treatment as a basis to discount Plaintiff's symptom testimony.

Plaintiff argues that a physician noting that Plaintiff showed improvement does not support the ALJ's determination.  (Doc. 17 at 17-18.)  In support, Plaintiff cites a string of cases.  *See Moriel v. Berryhill*, No. SA CV 17-2215-PLA, 2018 WL 6435325 (C.D. Cal. Dec. 7, 2018), *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001), *Barajas v. Berryhill*, No. 1:17-CV-01551-BAM, 2019 WL 928221, at *7 (E.D. Cal. Feb. 26, 2019).  However, these cases are inapposite.  In *Moriel v. Berryhill*, the ALJ's rejection of a physician's opinion was primarily supported by reports that the plaintiff was "generally doing well" or was "stable," along with a general lack of change in the plaintiff's medication.  *Moriel v. Berryhill*, No. SA CV 17-2215-PLA, 2018 WL 6435325 (C.D. Cal.

Dec. 7, 2018).  In contrast to the more general reports of *Moriel*, the ALJ here cited Dr. Marmolejo's and Ms. Ashmore's visit evaluations, Plaintiff's daily activities as shown by her testimony and the record, and Plaintiff's response to treatment.  AR 27-28.  In *Holohan v. Massanari*, the Ninth Circuit cautioned that a physician's "statements must be read in context of the overall diagnostic picture he draws" and noted "[t]hat a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."  *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).  In the instant case, however, the ALJ did not simply cherry-pick signs of improvement but instead reviewed the record holistically, including Plaintiff's activities and testimony, Ms. Ashmore's treatment reports, and Dr. Marmolejo's treatment records.  AR 27-28, 377-379, 416-420, 426, 432, 437, 450, 456, 462, 468, 475, 489, 521-524, 533, 558-561, 567-571, 578-581, 583-586, 592, 594, 595, 598, 600, 608, 610, 613, 616-617, 620.  In *Barajas v. Berryhill*, the Court noted that, "[b]y themselves, notations indicating that a claimant is doing well or is stable do not contradict a treating physician's opinion of a claimant's functional limitations."  *Barajas v. Berryhill*, No. 1:17-CV-01551-BAM, 2019 WL 928221, at *7 (E.D. Cal. Feb. 26, 2019).  However, the Court in that case was discussing whether the physician's treatment notes were inconsistent with his own opinion, rather than whether a physician's notes were inconsistent with the plaintiff's subjective symptoms.  *Id.*  In addition, the Court there found that the ALJ's conclusion was "based upon isolated favorable portions of the record."  *Id.*  As discussed, the ALJ here based his opinion upon a more comprehensive review of the record, including a survey of Dr. Marmolejo's visit evaluations and Ms. Ashmore's reports.  AR 27-28, 377-379, 416-420, 426, 432, 437, 450, 456, 462, 468, 475, 489, 521-524, 533, 558-561, 567-571, 578-581, 583-586, 592, 594, 595, 598, 600, 608, 610, 613, 616-617, 620.  Accordingly, Plaintiff's argument that the ALJ selectively used individual notes of improvement to discount Plaintiff's testimony fails.

The Court therefore concludes that the ALJ did not err in discounting Plaintiff's subjective complaints.

///

///

24

**CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be denied; and

2. The Clerk of this Court be directed to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Lisa Godfrey.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that the failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**March 13, 2023**__   ____/s/ *Barbara A. McAuliffe*____

              UNITED STATES MAGISTRATE JUDGE